UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| EDWARD DAVIES, ) | CRIMINAL NO. 20-cr-00245-01 (RBW) |
| ) | |
| Defendant. ) | |
| ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM
## AS TO DEFENDANT EDWARD DAVIES

Beginning in October 2012, defendant Edward Davies ("Davies") became the fiscal steward of a non-profit organization, the DC Children and Youth Investment Trust Corporation ("DC Trust"), whose mission was to serve the educational needs of District of Columbia's children. During his tenure as the Executive Director of DC Trust, from October 2012 through on or about February 2016, defendant Davies helped himself to at least $111,332.46 worth of goods and services for his personal benefit using DC Trust-issued credit and check cards. To reflect the seriousness of his offense and to deter him and others from violating their fiduciary duties by engaging in such behavior, the government asks the Court to sentence defendant Davies to a term of no more than 12 months imprisonment followed by three years of supervised release, and to order the defendant to pay restitution in the amount of $111,332.46. The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following memorandum in support.

I.   **INTRODUCTION**

On November 4, 2020, a federal grand jury sitting in the District of Columbia returned a 10-count Indictment charging defendant Davies and his co-defendant, Earl Hamilton ("Hamilton") with offenses relating to their embezzlement from DC Trust. *See* ECF No. 1. Specifically, defendant Davies was charged in Counts Two, Four, Five, and Six, with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and in Count Nine with one count of credit card fraud, in violation of 22 D.C. Code § 3223(b)(5) and (d)(2). *Id*. Co-defendant Hamilton was charged in the Indictment in Counts One, Three, Seven, and Eight, with four counts of wire fraud, in violation of 18 U.S.C. § 1343; and in Count Ten with one count of credit card fraud, in violation of 22 D.C. Code § 3223(b)(5) and (d)(2). *Id*. The Indictment also contained a forfeiture allegation. *Id*. On November 30, 2022, the defendant Davies pled guilty to Count Nine of the Indictment, charging one count of credit card fraud, in violation of 22 D.C. Code § 3223(b)(5) and (d)(2). ECF No. 90.[1] A sentencing hearing is scheduled for May 11, 2023, at 11:00 a.m.

II.   **FACTUAL BACKGROUND**

According to the Statement of Facts [ECF No. 91], DC Trust was a non-profit organization, created in 1999, whose mission was to service the District of Columbia's children, youth, and their families. The DC Trust was designed as an intermediary to connect philanthropists, government leaders, youth advocates, and representatives from the business community in order to support programs to benefit the children of the District of Columbia. Almost all of the funding for the DC Trust was provided by the government of the District of Columbia and the United States Department of Education. The DC Trust's funding from the

---

[1] Pursuant to the plea agreement, the government will move to dismiss the remaining counts after the Court imposes sentence.

U.S. Department of Education consisted of federal grant funding under the U.S. Department of Education Opportunity Scholarship Program ("OSP"), which was designed to provide low-income parents residing in Washington, D.C., with expanded options for the education of their children. The OSP awarded grants on a competitive basis to organizations looking to establish scholarship programs to assist eligible students with attending certain participating non-public District of Columbia elementary or secondary schools. The DC Trust was a grantee of this program, and the funding it received through the OSP was authorized to be spent solely on scholarships and limited expenses related to the administration of the program.

In October 2012, defendant Davies became the interim executive director of the DC Trust, and in November 2012, he became the permanent executive director of the DC Trust. In November 2012, defendant Davies fired the controller of the DC Trust and created a new position called "director of operations and finance." In December 2012, defendant Davies hired co-defendant Hamilton to fill that position. Defendants Davies and Hamilton each received an annual salary of over $100,000 as compensation for their work for the DC Trust.

The DC Trust held a bank account, which had an account number ending in "1059," that the DC Trust used as an operating account from which it paid administrative expenses. There was a check card associated with this account that could be used to make business purchases. When defendant Davies became executive director of the DC Trust, he became the only employee signatory for the account that was linked to this check card. On January 29, 2013, co-defendant Hamilton was added as an additional employee signatory for this account and, as such, became the only other employee signatory to this account that was linked to the check card. In August 2013, co-defendant Hamilton directed one of the DC Trust's accountants to open corporate credit card

accounts with American Express and to issue DC Trust credit cards in the names of the co-defendants and two additional DC Trust employees.

According to the DC Trust Employee Handbook, which was revised in February 2014 during defendants' tenure as leaders of the DC Trust, "Corporate Credit Card usage must be related to official verifiable company expenditures.  Charges applicable to personal expenses are not acceptable under any circumstances.  Examples of Official Company Expenditures with prior authorization of Departmental Managers are: office supplies, business travel or client related meals, lodging, car rental, airline baggage fees, taxi service, etc."  The DC Trust also had a travel reimbursement policy, effective March 23, 2009, under which work-related travel expenses were reimbursable; however, the policy cautioned employees that "care should be taken to identify a room at a reasonable rate aligned with the allowable rate for the hosting city according to the General Services Administration's (GSA) rate schedule."  Similarly, the policy stated that meals consumed during authorized work-related travel would be reimbursed according to "the GSA per diem schedule for meals and incidentals."  According to DC Trust employees and board members, the commuting costs of employees and officers were not reimbursable.

One of the DC Trust's two accountants was responsible for obtaining receipts submitted by DC Trust staff who used the DC Trust credit cards, including defendants, and reconciling each month's credit card statements in the company's ledger.  The DC Trust was governed by a board of directors, which held regular meetings at which defendants Davies and Hamilton were required to give reports about the organization's activities and finances.  The board had no finance committee until one was created in late 2015 by the chair of the board at the time, who wanted to improve the board's financial oversight of DC Trust.

Between October 1, 2012, and February 29, 2016, in the District of Columbia and

elsewhere, defendant Davies devised and intended to devise a scheme and artifice to defraud and obtained and intended to obtain money and property by means of false and fraudulent pretenses, representations, and promises—that is, defendant Davies intended to defraud the DC Trust of money and property through fraudulent transactions and other means as more fully described below. A purpose of the scheme was for defendant Davies to steal D.C. Trust funds for personal purposes and expenses.  Defendant Davies perpetrated this scheme to defraud by using DC Trust's bank check card and corporate credit cards to make unauthorized personal purchases, by lying to the DC Trust accountants about the nature of these purchases, and by hiding from the board of directors the exorbitant monthly bills that resulted.

The acts in furtherance of this scheme to defraud included the following acts and omissions, among others, which were taken and made by defendant Davies between October 1, 2012, and February 29, 2016: (1) defendant Davies used the DC Trust check card to make numerous payments to third parties, for his own personal expenses, to include but not limited to payments for meals, retail purchases, commuting costs, and personal travel.  Defendant Davies was not authorized to use the funds of DC Trust for purely personal transactions such as these; and (2) defendant Davies used the DC Trust credit card in his name to make over 600 payments to third parties, for his own personal expenses, to include but not limited to payments for meals, groceries and other retail purchases, commuting costs, personal automobile expenses, personal travel, and the personal travel of family members and friends.  Defendant Davies was not authorized to use the funds of the DC Trust for purely personal transactions such as these.  Some examples of these personal transactions include but are not limited to:

    A.    During the entire period of October 1, 2012, through February 29, 2016, defendant Davies used the DC Trust credit card to make a total of over $2,000 in purchases

at Target stores in the area, mostly in Maryland, where he resided at the time;

  B.  During the entire period of October 1, 2012, through February 29, 2016, defendant Davies used the DC Trust credit card to make approximately $800 in purchases at Home Depot stores in the area, mostly in Maryland, where he resided at the time;

  C.  During the entire period of October 1, 2012, through February 29, 2016, defendant Davies charged roughly $1700 in Metrorail charges to the DC Trust credit card;

  D.  During the entire period of October 1, 2012, through February 29, 2016, defendant Davies made about $1,400 of purchases at Commissary restaurant in the Logan Circle neighborhood of Washington, D.C., near the location of the D.C. Trust office. Most of these purchases were in amounts of about $30;

  E.  During the period of October 1, 2012, through February 29, 2016, defendant Davies made over $650 of purchases at Bua Thai restaurant, in the Logan Circle neighborhood of Washington, D.C., near the location of the DC Trust office. The average cost of these purchases was about $40;

  F.  Defendant Davies used the DC Trust credit card to pay $100.52 for a room at the Westin Washington hotel in Washington, D.C., for Sunday, December 13, 2015;

  G.  On Tuesday, December 15, 2015, defendant Davies used the DC Trust credit card to pay $176.00 for a dinner for two at The Riggsby restaurant in Washington, D.C.;

  H.  Defendant Davies traveled to Chicago, Illinois on December 23, 2015, and returned home on December 25, 2015. While in Chicago, defendant Davies used the DC Trust credit card to pay a $120 tab at The Marq restaurant and a $172 bill at Fat Rice restaurant. Defendant Davies also used the DC Trust credit card to pay $66 for parking at

Baltimore Washington International Airport while he was on this trip;

    I.    Days later, defendant Davies returned to Chicago for New Year's Eve 2015/2016. Defendant Davies used the DC Trust credit card to pay $763.20 to pay for round-trip plane tickets and $50 for parking at Washington Reagan National Airport for this trip.

For many of defendant Davies' personal transactions using DC Trust's credit and check cards, he submitted to DC Trust's accountants false justifications or no justification at all, causing the accountants to make inaccurate and incomplete entries in the DC Trust's internal accounting system.

In addition, defendant Davies ignored the requirement that a D.C. Trust board member co-sign checks for more than $25,000 by repeatedly paying credit card bills online through Automated Clearing House ("ACH") payments – credit card bills that included defendant Davies' personal purchases. Of the 43 payments made to pay down the DC Trust credit cards during the time period of October 1, 2012, through February 29, 2016, 38 of these payments were made via online ACH payments. Of the remaining five payments made during this period, which were all made by check, only three were for amounts greater than $25,000, and defendant Davies co-signed all three of these checks, in violation of the policy requiring the signature of one board member on checks above the $25,000 threshold. At the regular meetings of the board of directors, defendants Davies and Hamilton gave presentations about the DC Trust's finances. At these meetings, they never told the board that they used the DC Trust check card and their DC Trust credit cards to make unauthorized personal purchases.

On or about January 14, 2016, defendant Davies entered into a civil separation agreement with DC Trust in which he admitted that since September 15, 2015, he made $25,485.42 in

7

unauthorized charges to his corporate credit card in violation of D.C. Trust's policies. Defendant Davies separated from D.C. Trust on January 11, 2016. Prior to his separation, defendant Davies paid back D.C. Trust $6,800 of the stolen funds.

Between October 1, 2012, and February 29, 2016, defendant Davies fraudulently obtained and paid for property and services of value in the amount of at least $111,332.46 by knowingly using for his own purpose DC Trust's credit and check cards, and the number on and description of said credit and check cards, which were issued to and provided to him by and at the request of the DC Trust, who was defendant Davies' employer at the time, to be used only for DC Trust purposes.

### III. SENTENCING CALCULATIONS

For a violation of felony credit card fraud, in violation of 22 D.C. Code § 3223(b)(5) and (d)(2), as set forth in Count Nine the defendant faces a maximum sentence of ten years of imprisonment,[2] a fine of $25,000, pursuant to 22 D.C. Code § 3571.01, a term of supervised release of not more than three years, pursuant to 24 D.C. Code § 403.01(b), an order of restitution under 16 D.C. Code § 711, and a special assessment. *See* ECF No. 99 ("PSR"), ¶¶ 6, 87, 92, 106. The Court may order the defendant to pay restitution as a condition of probation or as a part of the sentence itself pursuant to 16 D.C. Code § 711. *Id.*, ¶ 106.

According to the Presentence Report, the D.C. Sentencing Commission's Voluntary Sentencing Guidelines (2022 ed.) ("D.C. Sentencing Guidelines") apply.[3] *Id*., ¶¶ 9, 34-35, 88. The offense of felony credit card fraud is a Group M9 offense. *Id*., ¶¶ 9, 35, 88.  Defendant

---

[2] The maximum sentence that can be imposed at the time of sentencing is 8 years. *See* ECF 99, ¶ 87.

[3] Because defendant Hamilton pled guilty to a D.C. Code violation rather than a federal criminal statute, the U.S. Sentencing Guidelines do not apply.

Davies has no criminal history, therefore, his Criminal History Score is a Category A. *Id.*, ¶¶ 36-43. As a result, the D.C. Sentencing Guidelines' range is a term of imprisonment of 1-12 months. *Id.*, ¶ 88.

## IV. RECOMMENDATION

### A. Analysis of the Sentencing Factors Under 24 D.C. Code § 403.01 and Section 3553(a)

After calculating the applicable Guidelines range, the Court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a) as well as the considerations of 24 D.C. Code § 403.01, which are similar in nature. Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 127 S. Ct. 2456, 2463 (2007). The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the Guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

Under the D.C. Code, the Court shall impose a sentence that: "(1) [r]eflects the seriousness of the offense and the criminal history of the defendant; (2) [p]rovides for just punishment and affords adequate deterrence to potential criminal conduct of the offender and others, and (3) [p]rovides the offender with needed educational or vocational training, medical care, and other correctional treatment." 24 D.C. Code § 403.01(a); *See* also ECF No. 99, ¶ 109.

1.      **Nature and Circumstances of the Offense and Its Seriousness**

How does one justify stealing funds meant for children's educational programs so that you and/or a friend can go to the Red Door Salon? *See* ECF No. 99, ¶ 22. Defendant Davies' conduct is particularly egregious because he was in charge of DC Trust and was responsible for the organization's financial well-being.  Those facts, in a nutshell, describe defendant Davies' criminal activities.  After arriving at DC Trust, defendant Davies started charging personal services and goods on the organization's check card, and later, making personal charges to its credit card and he continued this activity until he was caught. Defendant Davies used DC Trust's check and credit cards to pay for hundreds of personal items and services, some of which were small, such as lunch at a Thai restaurant, or large, like two airline tickets to New Hampshire for a wedding. *Id*. Like his co-defendant, who also had a six-figure salary at DC Trust there appears to be no reason for defendant Davies' theft of funds other than sheer greed and possibly, defendant Davies living beyond his means. After careful calculations, the government and defendant agree that his criminal actions caused a loss of at least $111,322.46. Thus, the nature and circumstances of the offense warrants a significant term of incarceration.[4]

2.      **The History and Characteristics of the Defendant**

The PSR does not suggest that the defendant Davies was mentally and/or emotionally incapable of avoiding his criminal conduct; instead, he chose to engage in criminal conduct intentionally and repeatedly because it was easy to pay for his personal expenses using the non-profits' check and credit cards.  *See* 99 ("PSR") ¶¶ 12-28, 62.  The defendant is a 52-year-old man, who is highly educated having earned a high school diploma from the Groton School,

---

[4] The restitution amount takes into account any funds that defendant Davies paid back to DC Trust.

attended Georgetown University for several years, and obtained a Bachelor of Arts in Communications from Marymount University. *Id*. ¶ 66. The defendant is currently enrolled at University of Maryland Global Campus (online) as an MBA Non-Profit Management Candidate. *Id*., ¶ 67. Defendant Davis has been married four times and has 2 adult children, and 4 underage children as well as a school-age stepdaughter. *Id*. ¶ 49-52. Defendant met his current wife, whom he married in June 2022, after she and the defendant were friends and co-workers.[5] *Id*., ¶¶ 42-43. Defendant Davies' father is deceased, and his mother is living with an older sister.[6] *Id*. ¶¶ 44-48. Defendant Davies is currently employed as the Director of Family and Community Engagement for the Children's Home and Aid in Chicago, Illinois. *Id*. ¶ 70. He also works as a Youth and Community Development Consultant. *Id*., ¶ 71. Defendant Davies does not have a criminal history. *Id*. ¶¶ 36-43.

As with his co-defendant, defendant Davies' acts in this matter were not one isolated incident, where he stole funds one time from the non-profit and then stopped. Defendant Davies' activities occurred over a period of time and included hundreds of individual charges using DC Trust's check and credit cards. Thus, defendant Davies actions could not have been accidental or a simple mistake. Indeed, defendant admitted in his separate agreement and release from DC Trust that ". . . since at least September 2015, employee has charged personal charges to his corporate credit card in the amount of Twenty-Five Thousand, Four Hundred Fifty-Eight Dollars, and Forty-Eight Cents ($25,458.48)." This amount did not reflect the entire scope of the scheme, temporally or monetarily. The facts show that defendant Davies deliberately decided over the

---

[5] The PSR is unclear about where defendant Davies and his current wife were employed together as co-workers.

[6] Defendant Davies has three siblings. *Id*., ¶ 44.

11

course of several years to tap into funds provided to the non-profit by the District of Columbia and the U.S. Department of Education. On the positive side, defendant Davies accepted responsibility for his actions and entered a guilty plea. Defendant Davies, however, has shown little understanding or remorse regarding his criminal activity against a non-profit. *See* ECF No. 99, ¶ 33. In order for there to be a sufficient deterrent for the defendant to cease committing crimes, the government recommends to a term of no more than 12 months imprisonment followed by three years of supervised release, and to order the defendant to pay restitution in the amount of $111,332.46.

### 3. The Need to Promote Respect for the Law and Deter Similar Criminal Conduct – and to Avoid Sentencing Disparities

The sentence should reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence, and to provide just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2). A prison sentence of incarceration of no more than 12 months would reflect the longevity of the defendant's scheme, the lack of evidence of remorse, the fiduciary duty he breached and his seeming willingness to continue additional criminal conduct until he was caught will accomplish the relevant purposes of U.S.S.G. § 3553(a)(2); that is: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct[.]" Given the defendant's educational background and experience, there does not appear to be any reason for defendant Davies to have breached his fiduciary duty as a financial steward of DC Trust or to use its accounts as a piggy bank.

As important is the Court's consideration of the possible deterrent effect that a sentence in this matter may have on others contemplating committing this type of fraudulent scheme. Section 3553(a) is not limited to the necessary sentence to deter the defendant from engaging in

further criminal conduct (specific deterrence), but also includes consideration of deterring other potential criminals from engaging in similar conduct (general deterrence).  *See, e.g., United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008) ("The plain language of the statute . . . also militates against limiting the authority of the court to specific deterrence. . . . We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing.").  From the standpoint of general deterrence a sentence of no more than 12 months of incarceration will send a strong message to all who seek to defraud that such acts will not be tolerated.

The law also requires that the Court "shall consider . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).  In this context, although (as noted above) the D.C. Sentencing Guidelines control, the Court should also be informed by reference to how the U.S. Sentencing Guidelines would apply to the same conduct if the parallel charged federal offense were the count of conviction.  As the PSR writer noted, Davies PSR at ¶ 90, had defendant been convicted (by plea) of a wire fraud for the same conduct, his federal sentencing Guidelines would have been at least 15-21 months.  *Id*.  While not controlling, such a range also weighs in favor of the 12-month sentence sought by the government.  Notably, such a range incorporates, as the D.C. Sentencing Guidelines do not, an enhancement for the abuse of position of trust – the very kind of position that makes the defendant's embezzlement from a charity here so egregious.

      **B.**      **The Defendant Should Be Required to Pay Restitution**

As noted in the PSR, DC Trust no longer exists as an entity. *Se*e ECF No. 93, ¶ 12, ECF No. 99, ¶¶ 6, 31. Defendant Davies, however, agreed as part of his plea agreement to pay restitution in the amount of $111,332.46 to the District of Columbia and Federal governments,

the percentage to each, to be determined by the government. *Id*. Indeed, 16 D.C. Code § 711, allows the Court to impose restitution as a condition of probation or as a sentence in itself. The government has conferred with the Offices of Inspector General for the District of Columbia and the United States Department of Education and have been informed that all restitution in this matter should be made payable to the United States Department of Education as set forth below.

United States Department of Education<br>
OFO - Financial Management Operations<br>
Accounts Receivable and Bank Management Division<br>
400 Maryland Avenue, SW, Rm. 5B148<br>
Washington, D.C. 20202<br>
Contact - Avis Williams<br>
202-453-6693<br>
Avis.Williams@ed.gov

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should sentence the to a term of no more than 12 months imprisonment followed by three years of supervised release, and to order the defendant to pay restitution in the amount of $111,332.46.  Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By: ____/s/ Diane G. Lucas_____
DIANE G. LUCAS, D.C. Bar No. 443610
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-7724
Diane.Lucas@usdoj.gov